UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CLEVELAND MITCHELL III,

        Plaintiff,                        Case No. 1:07-cv-92

v.                                            Honorable Janet T. Neff

PATRICIA L. CARUSO et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Cleveland Mitchell III, an inmate currently confined at the Ryan Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against MDOC Director Patricia Caruso, MDOC Deputy Director Dennis Straub, and JMF Warden Sherry L. Burt. Plaintiff's complaint alleges that Defendants have violated his constitutional rights by the initial enactment and subsequent enforcement of Director's Office Memorandum 2006-14 (DOM 2006-14). Enacted on December 14, 2006, DOM 2006-14 prohibits prisoners from entering into new legal assistance agreements because prisoners' abuse thereof "poses a threat to the custody and security of [correctional] institutions." (Compl. Ex. C). As noted in DOM 2006-14, prisoners with approved legal assistance agreements as of December 14, 2006, are allowed to provide and receive assistance thereunder until their expiration; eligible inmates continue to be entitled to the Legal Writer Program; and all inmates retain their existing privileges to the law library. (*Id.*)

Plaintiff alleges that DOM 2006-14: (1) is an "unconstitutional policy" in general; (2) violates prisoners' access to the courts; (3) was enacted in retaliation for prisoners' exercise of

their right to access the courts; (4) violates prisoners' due process rights; (5) effectively allows only certain prisoners to obtain legal assistance; and (6) intentionally inflicts emotional distress on prisoners. Plaintiff also appears to be asserting an equal protection claim.

For relief, Plaintiff seeks a declaration that DOM 2006-14 and Defendants' retaliatory and discriminatory execution thereof violates the Due Process Clause and First Amendment, an injunction prohibiting Defendants' further enforcement of the policy against Plaintiff and class members, an injunction requiring Defendants to allow Plaintiff and other inmates to provide legal assistance to other prisoners, costs, and fees. On March 15, 2007, the court denied Plaintiff's request for class certification, dismissed Plaintiff's access to courts and retaliation claims, and ordered service on Defendants with regard to Plaintiff's Fourteenth Amendment claims (docket #8 and #9).

Presently before the Court are Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed responses and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants contend that Plaintiff does not have standing to bring this action because he has not suffered an injury in fact. To establish standing to assert a claim under 42 U.S.C. § 1983, a prospective plaintiff must demonstrate an "injury in fact" that it is both "concrete and particularized" and is "actual or imminent." *Barden Detroit Casino, L.L.C. v. City of Detroit,* 230 F.3d 848, 854 (6th Cir.2000).

As noted above, Plaintiff's request for class certification was previously denied by the court, so that Plaintiff's standing must be based on a violation of his own rights. As the Supreme Court has noted:

> Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." See, *e.g., Golden v. Zwickler,* 394 U.S. 103, 109-110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell,* 330 U.S. 75, 89-91, 67 S.Ct. 556, 564-565, 91 L.Ed. 754 (1947); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923).

*City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983).

Defendants state that Plaintiff's complaint fails to set forth any instance in which Plaintiff was denied a fundamental right by not being allowed to enter into a legal agreement with another prisoner. In his response, Plaintiff relies on *Johnson v. Avery*, 393 U.S. 483 (1969), for the proposition that a prisoner has the right to assistance from other prisoners. As noted by Defendants, the plaintiff in *Johnson* had standing because he had been disciplined for providing legal assistance to illiterate prisoners. *Id.* at 484. Plaintiff has alleged no such injury.

Plaintiff's complaint alleges that his ability to provide legal assistance to other prisoners is hindered by the MDOC policy forbidding him from forming legal assistance agreements with those prisoners. Plaintiff does not allege that he has been punished for violating this policy or that this policy has injured him in any concrete fashion. Plaintiff's other contentions assert the importance of allowing legal agreements in order to protect vulnerable prisoners' rights to access the courts. However, Plaintiff's First Amendment claim has already been dismissed by this court. Moreover, there is no First Amendment right to provide legal assistance to another inmate. *Shaw v. Murphy*, 532 U.S. 223, 228 (2001). Generally, legal assistance agreements are only protected when the inmate receiving the assistance would otherwise be unable to pursue redress and thus are derivative of the inmate's right of access to the courts. *Herron v. Harrison*, 203 F.3d 410, 415-16 (6th Cir. 2000). Therefore, the undersigned concludes that Plaintiff lacks standing to bring this action.

Defendants also assert that Plaintiff has not established a Fourteenth Amendment due process violation because Plaintiff does not have a liberty interest in providing legal assistance to other prisoners. Procedural due process claims require resolution of two questions:

> [T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Hewitt v. Helms*, 459 U.S. at 472.

*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Generally speaking, one determines whether a protected interest exists by determining whether the individual claiming it has a legitimate claim of entitlement to it. *Id.* at 460.

As noted above, legal assistance agreements are only protected when the inmate receiving the assistance would otherwise be unable to pursue redress and thus are derivative of the inmate's right of access to the courts. *Herron*, 203 F.3d at 415-16. Defendants properly note that in *Johnson v. Avery*, 393 U.S. 483 (1969), which Plaintiff relies on to support his claims, the court found that although inmates must be allowed to assist other inmates in the absence of an available alternative, a State may elect to limit or prohibit mutual assistance among inmates by providing other alternatives. *Id.* at 489-90. Defendants cite *Sizemore v. Lee*, 20 F. Supp. 2d 956 (W.D. Va. 1998), *app dis'd*, 173 F3d 425 (4th Cir. 1999). In *Sizemore*, the court found that the plaintiff did not have a constitutional right to engage in writ writing for other inmates because the right to access the courts is clearly personal to the inmate who is seeking to bring actionable claims before the court. *Id.* at 958.

A review of the record in this case shows that although prisoners in the MDOC are no longer able to enter into legal assistance agreements with other prisoners, they are able to receive legal assistance from the Legal Writer Program if they meet certain criteria indicating a need for such assistance. (See Exhibit D to Plaintiff's complaint, Notice to Prisoners of Policy Change.) Therefore, the MDOC has provided other alternatives to the legal assistance agreements, as required by *Johnson v. Avery*. Because Plaintiff's allegations fail to support his assertion that he was deprived

of any liberty interest, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's due process claims.

Defendants further state that they are entitled to summary judgment on Plaintiff's equal protection claims because there is a rational connection between the prohibition on inmate legal agreements and the need for prison security. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As we have explained, "to withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005) (quoting *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir. 2002)). The district court concluded properly that plaintiffs are not members of a suspect class and that they do not allege a violation of a fundamental right. "Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson,* 411 F.3d at 619; *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, there is no fundamental right to parole under the Constitution. *Bd. of Pardons v. Allen,* 482 U.S. 369, 373 (1982); *Jackson,* 411 F.3d at 619.

Plaintiff does not specify the basis of his equal protection claim. As noted above, Plaintiff does not have a constitutional right to form legal assistance agreements. Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.' " *Id.* (quoting *Warren v. City of Athens,* 411

F.3d 697, 710 (6th Cir. 2005)). The plaintiffs bear the burden of demonstrating that the government lacks a rational basis, and they may satisfy this burden either by negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Id.* (quoting *Warren,* 411 F.3d at 711). The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005)).

Defendants note that in the December 14, 2006, memorandum 2006-14, which addressed the termination of prisoner legal agreements, Director Caruso listed the security concerns which motivated the change in policy. These concerns included prisoners charging for legal services, prisoners entering into legal agreements to receive joint law library call-outs in order to socialize with other prisoners with whom they have a social relationship, to pass contraband, and to meet with other prisoners with whom they would otherwise be prohibited from associating. Another concern was that the assisting prisoner could improperly refuse to complete legal work or to return it to the prisoner receiving assistance, which would give the legal assistant undue influence over the prisoner receiving assistance. (See Exhibit C to Plaintiff's complaint, Director's Officer Memorandum 2006-14.) Plaintiff fails to come forward with any evidence demonstrating that the government lacks a rational basis by negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Club Italia Soccer & Sports Org.,* 470 F.3d at 298 (quoting *Warren,* 411 F.3d at 711). Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's equal protection claims.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motions for Summary Judgment. Accordingly, it is recommended that Defendants' Motions for Summary Judgment (Docket #68 and #72) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 24, 2009